UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD KEARNEY,

                              Plaintiff,
                                                    9:11-CV-1281
v.                                                  (GTS/TWD)

N.Y.S.D.O.C.S.; DR. KARANDY,
Facility Health Services Director,
Great Meadow Correctional Facility,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

RICHARD KEARNEY, 03-A-4948
Plaintiff pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN                           C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York          Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, Title II

of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"), and Section 504 of

the Rehabilitation Act of 1973 ("Rehabilitation Act") has been referred to me for Report and

Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff  Richard Kearney brings the present action

against the State of New York, the New York State Department of Corrections and Community Supervision ("DOCCS"), and Dr. David Karandy, a physician employed by DOCCS as the Facility Health Services Director at Great Meadow Correctional Facility ("Great Meadow"). In his complaint, Plaintiff alleges that Defendants subjected him to unlawful disability discrimination during his incarceration at Great Meadow by refusing his request for transfer to another DOCCS facility with greater accommodation for inmates with mobility impairments. (Dkt. No. 1.) Plaintiff alleges that he suffered physical and mental injury as a result of Defendants' refusal to grant his transfer request. *Id*. He seeks compensatory and punitive damages pursuant to the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. Plaintiff also asserts a claim for fraud under New York state law.

Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 27.) For the reasons discussed below, I recommend that Defendants' motion for summary judgment be granted.

## I.   FACTUAL AND PROCEDURAL SUMMARY

Plaintiff, an inmate in the custody of DOCCS, suffers from arthritis in both knees and has difficulty walking as a result. (Dkt. No. 27-4 at 2.) Due to his knee condition, Plaintiff must rely on the aid of crutches and knee braces for mobility. (Dkt. No. 1 at 6 ¶ 16.) Even with crutches and knee braces, Plaintiff's arthritis makes it difficult and painful for him to use stairs and to walk long distances. (Dkt. No. 1 at 7 ¶ 17.) In addition to his arthritic knees, Plaintiff has asthma. (Dkt. No. 1 at 7 ¶ 18.)

Plaintiff's claims in this action are based on the treatment he received while incarcerated at Great Meadow. Plaintiff, who is currently incarcerated at Green Haven Correctional Facility, was transferred to Great Meadow from another DOCCS facility in November 2010. (Dkt. No 1 at 2 ¶ 4.) On December 22, 2010, a little over a month after arriving at Great Meadow, Plaintiff submitted a "reasonable accommodations request" form to prison administration requesting "transfer to facility that is without stairs and adequate accommodations under the Americans with Disabilities Act." (Dkt. No. 27-4 at 2.) In the space provided on the form for explanation of the disability necessitating accommodation, Plaintiff wrote "two knee braces and crutches." *Id.*

Following the DOCCS procedure for reviewing reasonable accommodation requests, Defendant Dr. David Karandy examined Plaintiff on January 25, 2011, to obtain medical verification of his condition and the requested accommodation. (Dkt. No. 27-4 at 2; 27-3 at 2-3.) In addition to the direct physical exam, Dr. Karandy reviewed Plaintiff's medical records. (Dkt. No. 27-3 at 3 ¶ 10.) Included in the medical records reviewed by Dr. Karandy was an April 28, 2008, report by Dr. G. Coniglio, a specialist who examined Plaintiff's knees during his incarceration at Attica Correctional Facility. (Dkt. No. 27-4 at 6.) In his report, Dr. Coniglio diagnosed Plaintiff with "severe degenerative osteoarthritis of the right knee" and "mild to moderate arthritic changes" in the left knee. *Id.* To treat the arthritis, Dr. Coniglio recommended arthroscopy for treatment of Plaintiff's left knee. *Id.* The report indicates that despite Dr. Coniglio's recommendation, Plaintiff refused the arthroscopy. *Id.* Regarding Plaintiff's refusal of the treatment, the report notes:

> He [the Plaintiff] doesn't want to have it right now, he just wants some kind of medication and start some sort of law suit against the correctional facility. I recommend he sees someone else if he wants for his ligament damage.

(Dkt. No. 27-4 at 6.)

In addition to Dr. Coniglio's 2008 report and recommendation, Dr. Karandy's review of Plaintiff's medical records included radiological reports completed by Wyoming Valley Radiologists in 2007 and 2008. (Dkt. No. 27-4 at 8, 10.) Consistent with Dr. Coniglio's report, these radiological reports identified arthritis as the cause of Plaintiff's knee condition. (Dkt. No. 27-4 at 8, 10.)

Based on his physical examination of Plaintiff and his review of Plaintiff's medical records, Dr. Karandy concluded that the transfer requested by Plaintiff was unnecessary because a "reasonable accommodation for his correctible [sic] orthopedic could be achieved at Great Meadow." (Dkt. No. 27-3 at 3 ¶ 12.) In lieu of transfer, Dr. Karandy recommended that DOCCS grant a "modified accommodation" to Plaintiff as follows: "Utilize–flats, feed in cell, crutches, braces." (Dkt. No. 27-4 at 2.) Translated from shorthand, Dr. Karandy's recommendation was that Plaintiff should be issued housing on the first floor of the correctional facility (i.e., "flats"), be provided meals in his cell rather than in the facility's mess hall, and be permitted to use crutches and braces. (Dkt. No. 27-3 at 3-4 ¶ 14.)

On February 23, 2011, the Deputy Superintendent for Security accepted Dr. Karandy's recommendation and approved the modified version of Plaintiff's accommodation request to include "flats, feed in cell, crutches and braces." (Dkt. No. 27-4 at 2.) In his "explanation of modification or denial," the Deputy Superintendent for Security found that "[t]ransfer is not a reasonable accommodations [sic]. Medical needs can be met here. Inmate refused medical consult." *Id.* A note at the bottom of the form indicates that Plaintiff disagreed with the decision but refused to acknowledge his receipt of the determination. *Id.*

On February 24, 2011, Plaintiff filed a grievance alleging that the denial of the reasonable accommodations he had requested constituted "unlawful discrimination" based on disability. (Dkt. No. 34 at 25.)  In a decision dated March 14, 2011, the Inmate Grievance Review Committee ("IGRC") found that the grievance should "be granted to the extent that grievant be provided with the proper medical care regarding his condition." (Dkt. No. 34 at 28.) The decision noted, however, that the IGRC "does not have the authority to assess and determine medical protocol . . . . The Facility Health Services Director has the sole responsibility for medical decisions."  *Id.*  The IGRC advised that Plaintiff should contact DOCCS' Chief Medical Officer, Dr. Carl Koenigsmann, with concerns regarding medical decisions.  *Id.*

Plaintiff appealed the decision of the IGRC to the Inmate Grievance Program Superintendent.  Following an investigation, the Superintendent found that Dr. Karandy had acted properly in investigating and diagnosing Plaintiff's condition, and that his determination that Plaintiff's condition "can be treated and is correctable" was supported by medical evidence.  (Dkt. No. 1-2 at 1.)  As such, the Superintendent concluded that Plaintiff's claims of disability discrimination were without merit.  *Id.*

On June 22, 2011, DOCCS physician Dr. D. Thompson issued an interdepartmental memorandum.  (Dkt. No. 27-4 at 12.)  The memorandum notified facility personnel that Plaintiff was to receive meals in his cell and "lock on the flats."  *Id.*  The memorandum also informed Great Meadow personnel that Plaintiff had permission to use the bilateral knee braces and crutches, and that he was restricted from working.  *Id*.

Plaintiff commenced the present action on October 27, 2011.  (Dkt. No. 1.)  Defendants

now move for summary judgment on Plaintiff's claims.  (Dkt. No. 27.)  Plaintiff has opposed

Defendants' motion.  (Dkt. No. 34.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

bears the initial burden of showing, through the production of admissible evidence, that no

genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).

Only after the moving party has met this burden is the nonmoving party required to produce

evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving

party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or

"simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a dispute regarding a

material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining

whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw

all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v.*

*Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[1]      A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

**B.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

### A.    Plaintiff's ADA and Rehabilitation Act Claims

Plaintiff alleges that Defendants violated the ADA and the Rehabilitation Act by refusing to grant his request for a medical transfer as a reasonable accommodation necessitated by his disability. (Dkt. No. 1.) Defendants move for summary judgment of these claims. (Dkt. No. 27.) For the reasons discussed below, I recommend that the Court grant Defendants' motion for summary judgment.

1.    ADA and Rehabilitation Act Claims Against Dr. Karandy

a.    *Individual Capacity*

As a threshold matter, Defendants assert that Plaintiff's claims against Dr. Karandy in his individual capacity should be dismissed because neither the ADA nor the Rehabilitation Act

authorizes claims against individual defendants. (Dkt. No. 27-7 at 5.[2]) Defendants are correct. Neither the ADA nor the Rehabilitation Act permits suits against state officials in their individual capacities. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, the Court should grant Defendant's motion for summary judgment as to Plaintiff's ADA and Rehabilitation Act claims against Dr. Karandy as an individual.

b.     *Official Capacity*

As to Plaintiff's claims against Dr. Karandy in his official capacity, it is well established that "the State is the real party in interest for [a] plaintiff's claims against the individual defendants in their official capacities." *Alster v. Goord*, 745 F.Supp.2d 317, 338-39 (S.D.N.Y. 2010) (citing *Fox v. State Univ. of N.Y.*, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007)). As such, the Supreme Court has explained that a suit brought against a person in his or her official capacity must be treated as a suit against the entity represented by that person, provided that the public entity received notice and an opportunity to respond. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Here, in addition to his "official capacity" claim against Dr. Karandy, Plaintiff has named the New York Department of Corrections and Community Supervision–a state agency–as a defendant in the action. The result is a redundant claim, as Plaintiff's claim against DOCCS and his "official capacity" claim against Dr. Karandy are one and the same. Where, as here, a plaintiff may proceed on his ADA claims against the State entity directly, it is appropriate for the court to "dismiss [ ] the official capacity claims because they [are] redundant of the claims against the

---

[2]     Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

government entity." *Fox*, 497 F. Supp. 2d at 451. For this reason, summary judgment is appropriate as to Plaintiff's official capacity claims against Dr. Karandy.

>    2.    Merits of Plaintiff's ADA and Rehabilitation Act Claims Against DOCCS

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir.), *corrected*, 511 F.3d 238 (2d Cir.2004)). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title I of the ADA defines the term "discrimination" to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A)22; *Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003) (noting that the term "'discrimination', which is not defined in Title II, may take its meaning from Title I.") (internal citations omitted); *Harris*, 572 F.3d at 73 ("To assure that...[the requirements of Title II] are met, 'reasonable accommodation' may have to be provided to the qualified individual.") (citation omitted).

The Rehabilitation Act prohibits disability discrimination using language similar to that of Title II. Subsection 794(a) provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Like Title II of the ADA, "the Rehabilitation Act requires that specified "otherwise qualified" disabled individuals receive reasonable accommodations from programs receiving federal financial assistance." Harris, 572 F.3d at 73 (citing 29 U.S.C. § 794(a); *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). Because the elements of Plaintiff's ADA and the Rehabilitation Act claims for disability discrimination are the same, the court considers these claims together and applies a single analysis to both. *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

To assert a claim under the ADA or the Rehabilitation Act ("the Acts"), a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Under the Acts, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004).

It is undisputed here that Plaintiff is a "qualified individual with a disability" and that DOCCS is a public entity subject to the Acts. Therefore, the undersigned will focus on the third element of Plaintiff's *prima facie* case–whether he was "denied the opportunity to participate in or

benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *Henrietta D*, 331 F.3d at 282.

To evaluate the merits of the plaintiff's disability claims in this case, the court must first determine whether the "medical transfer" requested by Plaintiff was, as Plaintiff contends, a reasonable accommodation mandated by the Acts. A 'reasonable accommodation' in the context of an ADA or Rehabilitation Act claim is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought. *Henrietta D.*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). When determining whether a particular accommodation constitutes a "reasonable accommodation" mandated by the Acts, the Second Circuit has explained that "'[r]easonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce." *Fulton v. Goord*, 591 F.3d 37, 44 (2d Cir. 2009) (citations omitted). Such a determination requires "a fact-specific, case-by-case inquiry." *Id*.

To succeed on his ADA and Rehabilitation Act claims here, Plaintiff must establish that transfer to another DOCCS facility was necessary to give Plaintiff 'meaningful access' to the programs and services provided to non-disabled inmates. *Henrietta D.*, 331 F.3d at 282. In support of this proposition, Plaintiff asserts that transfer to a facility with "medical infirmity housing" was necessary to provide him with meaningful access to toilet and shower facilities and the opportunity to participate in outdoor recreation. (Dkt. No. 1 at 2 ¶¶ 4-5.) Plaintiff also cites the long distances he must walk to reach the recreation yard and the presence of stairs at Great Meadow as evidence of the facility's unsuitability for housing inmates with mobility impairments. *Id.*

In his focus on DOCCS' refusal to transfer him to another facility and the aspects of the Great Meadow facility he considers unacceptable, Plaintiff ignores the weight of medical records and other evidence of the affirmative steps that Defendants did take to accommodate his disability. In response to the "reasonable accommodation request form" submitted by Plaintiff, DOCCS granted the following accommodations to Plaintiff: (1) the use of crutches and knee braces to assist with walking; (2) housing on the first floor of the facility to prevent Plaintiff from having to use stairs when traveling to or from his cell; (3) the serving of meals to Plaintiff in his cell to prevent him from having to walk to and from the facility's mess hall; and (4) an exemption from working. (Dkt. No. 27-4 at 2; Dkt. No. 27-4 at 12.) DOCCS granted these accommodations pursuant to Dr. Karandy's recommendation, which he made based on a physical examination of Plaintiff and a review of Plaintiff's medical records. (Dkt. No. 27-4 at 2; Dkt. No. 27-3 at 3 ¶ 12.)

Given the accommodations actually provided to Plaintiff by the Great Meadow administration, Plaintiff fails to create a genuine issue of material fact sufficient to sustain his ADA and Rehabilitation Act claims. The Second Circuit has explained that although a public entity must make "reasonable accommodations," it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice. *McElwee v. County of Orange,* 700 F.3d 635, 640 (2d Cir. 2012) (*citing Fink v. N.Y.C. Dep't of Personnel,* 53 F.3d 565, 567 (2d Cir.1995)). Here, DOCCS complied with its obligations under the law by providing Plaintiff with reasonable accommodations while at Great Meadow Correctional Facility. The fact that DOCCS refused to grant Plaintiff "the accommodation of his choice" does not subject Defendants to liability for disability discrimination. *Pacheco v. Zurlo*, No. 9:09-CV-1330 (TJM/ATB), 2011 WL 1103102, 2011 U.S. Dist. LEXIS 29668 (N.D.N.Y. Feb. 8, 2011)

(concluding that transfer to a different DOCCS facility was not a reasonable accommodation where the inmate's disability could be accommodated "in various ways without transferring him to another facility"); *see also Cole v. Goord*, No. 05 Civ. 2902 (GEL), 2009 WL 2601369, at *9, 2009 U.S. Dist. LEXIS 75580, at *30-31 (S.D.N.Y. Aug. 25, 2009) (granting summary judgment on inmate's claim that prison officials violated the ADA by transferring him to another, more accessible facility in response to the inmate's request for accommodations because the inmate "had no right to remain at any particular facility within DOCS"); *Garrett v. Angelone*, 940 F. Supp. 933, 942 (W.D.Va.1996), *aff'd,* 107 F.3d 865 (4th Cir.1997) (holding that neither the Equal Protection Clause nor the ADA create any right for an inmate to be housed at a specific prison).[3]

Moreover, aside from his bare assertion that transfer to a facility with a "medical infirmity unit" is required as a reasonable accommodation under the ADA, Plaintiff fails to support his claim by identifying any specific facility or facilities within the DOCCS system that would better accommodate his disability.  (Dkt. No. 1 at 4 ¶ 10); *see McElwee v. County of Orange,* 700 F.3d 635, 640 (2d Cir. 2012) ("A plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue."); *see also McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97–98 (2d Cir. 2009) (noting, in the employment context, that a plaintiff requesting a reassignment as an accommodation must demonstrate that a vacant position existed "at or around the time when accommodation was sought").

---

[3] The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Applying the requisite "fact-specific, case-by-case inquiry" standard for determining whether a particular measure is a reasonable accommodation, the Court concludes that the facility transfer requested by Plaintiff was not a reasonable accommodation mandated by the Acts. Rather, the evidence establishes that the accommodations granted to Plaintiff in response to his request—"flats" housing, meals provided in his cell, an exemption from work, and the use of knee braces and crutches—were sufficient to provide Plaintiff with "meaningful access" to prison programs and services at Great Meadow and were thus reasonable accommodations for purposes of the ADA and the Rehabilitation Act. As such, Defendants' motion for summary judgment should be granted as to Plaintiff's ADA and Rehabilitation Act claims.

3.     ADA and Rehabilitation Act claims against DOCCS: Sovereign Immunity

As an alternative ground for summary judgment on Plaintiff's ADA and Rehabilitation Act claims, Defendants argue that the Plaintiff's disability claims in this case are insufficient to abrogate DOCCS' sovereign immunity under the Eleventh Amendment and must therefore be dismissed.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Grounded in the Eleventh Amendment, the doctrine of sovereign immunity bars federal courts from entertaining a suit brought against a state or state agency absent the state's consent or an abrogation of sovereign immunity by Congress. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States

may not be sued by private individuals in federal court."). For sovereign immunity to be deemed abrogated by an act of Congress, the legislative intent to abrogate must be unequivocal and Congress must act pursuant to valid constitutional authority. *Garrett*, 531 U.S. at 363-64.

 With respect to claims arising under Title II of the ADA, it is clear from the language of the statute that Congress fully intended to abrogate state sovereign immunity, thus satisfying the "unequivocal intent" requirement. *Garcia*, 280 F.3d at 108 (citing 42 U.S.C. § 12202). Although Congress' "unequivocal intent" to abrogate sovereign immunity is established for any claim brought under Title II, "valid constitutional authority" for such an abrogation in Title II actions for monetary damages does not always exist. *Id.* For Title II to abrogate a state's sovereign immunity in a particular claim, authority for said abrogation must exist under the Fourteenth Amendment, which authorizes Congress to "'enforce,' by 'appropriate legislation' the constitutional guarantee that no State shall deprive any person of 'life, liberty or property, without due process of law,' nor deny any person 'equal protection of the laws.'" *Id.* (*citing City of Boerne v. Flores*, 521 U.S. 507, 517 (1997)). In other words, this means that Congress may abrogate Eleventh Amendment immunity to enforce the substantive rights guaranteed by the Fourteenth Amendment. *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir.2010).

In *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), the Second Circuit articulated the standard for determining whether the Fourteenth Amendment applies to abrogate sovereign immunity as to a particular Title II claim. *Id*. at 107. The Court in *Garcia* held that the Fourteenth Amendment authorizes the abrogation of sovereign immunity for claims brought under Title II where a plaintiff can establish that "the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Id*. at 111. More recently,

in *Bolmer v. Oliviera*, 594 F.3d 134, the Second Circuit clarified the its holding in *Garcia* in light of the Supreme Court's holdings on the issue of sovereign immunity in *Tennessee v. Lane*, 541 U.S. 509 (2004) and *United States v. Georgia*, 546 U.S. 151 (2006).[4]  *Id.*  The court in *Bolmer* held that the discriminatory animus requirement articulated in *Garcia* only applies where abrogation of sovereign immunity is based on Congress' enforcement of the Equal Protection Clause of the Fourteenth Amendment.  *Id.* at 146.  Where the plaintiff can establish an actual Fourteenth Amendment violation, however, the Court explained that a showing of discriminatory animus is unnecessary.  *Id.* at 148.   The Second Circuit declined in *Bolmer* to reach the question of whether or not *Garcia* survived the Supreme Court's decisions in *Lane* and *Georgia*. *See Bolmer*, 594 F.3d at 148. What is clear after *Georgia*, however, is that "sovereign immunity will be abrogated under Title II when a plaintiff can demonstrate an actual Fourteenth Amendment violation." *Hilton v. Wright*, ___ F. Supp. 2d ___, No. 9:05-CV-1038, 2013 U.S. Dist. LEXIS 55047, at *58; 2013 WL 873826, at *19 (N.D.N.Y.  Mar. 11, 2013).

In the present case, Plaintiff's ADA and Rehabilitation Act claims of disability discrimination are grounded in the Equal Protection Clause of the Fourteenth Amendment.  Here, Plaintiff's allegations are insufficient to establish discriminatory animus or ill will on the part of

---

[4]      In *United States v. Georgia*, 546 U.S. 151 (2006), the plaintiff asserted claims under Title II based on the state prison's alleged failure to accommodate his needs, including his medical needs.  *Id*. at 157.  He alleged that same conduct violated the Eighth Amendment proscription against cruel and unusual punishment.  *Id*. at 157.  In determining that sovereign immunity was abrogated on those facts, the Supreme Court found that the Title II claims "were evidently based, at least in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment [incorporating the Eighth Amendment's prohibition against cruel and unusual punishment]." *Id.* at 157.  *Georgia* left open the question of whether Title II validly abrogates sovereign immunity for conduct that violates Title II but does not violate the Constitution.  *Id.* at 159.

Dr. Karandy or DOCCS as the motivating force behind the denial of Plaintiff's requested transfer. Moreover, the numerous accommodations granted to Plaintiff in lieu of the requested transfer weigh against a finding of discriminatory animus. In light of the factors discussed in Section III(A)(2) of this Report-Recommendation, Plaintiff is likewise unable to establish that DOCCS refusal to transfer Plaintiff to another facility resulted in an actual violation of the Fourteenth Amendment's Equal Protection Clause. Thus, in the alternative to dismissal on the merits as discussed above, Defendants' motion for summary judgment should be granted on grounds of sovereign immunity.

### B. Plaintiff's 42 U.S.C. § 1983 Claims

Construing Plaintiff's allegations liberally, the complaint includes claims against Defendants for violating Plaintiff's Eighth and Fourteenth Amendment rights. Specifically, Plaintiff alleges that by denying his request for transfer to a more accessible facility, Defendants subjected him to inhumane conditions of confinement in violation of the Eighth Amendment. (Dkt. No. 1 at 2 ¶¶ 4-6.) Plaintiff also alleges that Dr. Karandy violated his Eighth Amendment right to receive treatment for serious medical needs. (Dkt. No 1 at 3 ¶ 8.) Finally, in addition to his Eighth Amendment claims, Plaintiff appears to assert a Fourteenth Amendment due process claim based on Defendants' allegedly inadequate review and denial of his reasonable accommodation request. (Dkt. No. 1 at 3 ¶ 6.)

### 1. 42 U.S.C. § 1983 Claim against DOCCS

To the extent that Plaintiff alleges 42 U.S.C. § 1983 claims against DOCCS, those claims must be dismissed as barred by sovereign immunity. Section 1983 allows a Plaintiff to recover

for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). The Supreme Court has held that because states and governments are not "persons" under § 1983, the Eleventh Amendment immunity is not abrogated by § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's § 1983 claims against DOCCS are barred by sovereign immunity. Thus, Defendants' motion for summary judgment as to these claims should be granted.

2.   42 U.S.C. § 1983 claim against Dr. Karandy: Eighth Amendment Claims

The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII.[5] The Eighth Amendment also imposes a duty upon prison officials "to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Based on the allegations in the complaint, Plaintiff appears to seek recovery for Eighth Amendment violations under two separate theories: medical indifference and conditions of confinement. Plaintiff's Eighth Amendment claims are discussed separately below.

a.   *Medical Indifference*

Through its prohibition on cruel and unusual punishment, the Eighth Amendment guarantees a prisoner medical treatment for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). An Eighth Amendment deliberate indifference claim includes both a subjective

_____

[5]The Eighth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433-34 (2001).

and an objective component that a plaintiff must establish to prevail. First, a plaintiff must establish that his medical condition is objectively serious in nature. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, a plaintiff must show that the defendant acted with deliberate indifference to his medical needs." *Farmer*, 511 U.S. at 834. Concerning the first element, a medical need is serious for constitutional purposes if it presents "a condition of urgency that may result in degeneration or extreme pain." *Hilton*, 2013 WL 873826, at *10 (citation omitted). To establish a sufficiently culpable state of mind as required for the second element of his medical indifference claim, a plaintiff must demonstrate that the prison official in question knew of the substantial risk of serious harm the inmate faced because of his medical condition and that the official nevertheless disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 838–42 (1994).

Here, assuming that Plaintiff is able to establish that his medical condition constituted a serious medical need, Plaintiff is unable to establish the second prong of his medical indifference claim because the record shows that Dr. Karandy took appropriate measures to abate Plaintiff's condition by granting a number of accommodations to Plaintiff in response to his request. It is undisputed here that although Dr. Karandy refused Plaintiff's request for transfer, he did recommend that Plaintiff be permitted to use crutches and braces, that he be housed "on the flats", and that he be fed in his cell. (Dkt. No. 27-4 at 2.) What Plaintiff claims as the basis of his Eighth Amendment medical indifference claim is that Dr. Karandy failed to take the proper action to address his medical condition, which Plaintiff claims would have been to grant his request for transfer to another facility. (Dkt. No. 1 at 4 ¶ 10.) However, the mere fact that Plaintiff disagreed

with Dr. Karandy's recommendation is not a sufficient basis for claiming medical indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Plaintiff has failed to show how Dr. Karandy's refusal to transfer him resulted in a risk of serious harm or that transfer to another facility would have provided superior accommodations to those authorized by Dr. Karandy and provided by DOCCS administration to Plaintiff while at Great Meadow. Accordingly, Plaintiff's medical indifference claim should be dismissed in its entirety

### b. *Conditions of Confinement*

Plaintiff alleges that Defendants subjected him to cruel and unusual conditions of confinement in violation of the Eighth Amendment by refusing to transfer him from Great Meadow to a facility better equipped to accommodate inmates with mobility impairments. (Dkt. No. 1 at 2.) Specifically, Plaintiff alleges that "[b]ecause of inadequate shower stalls, excessive amount of interior stair steps, and an excessive walking distances [sic] . . . [Defendants] deprived me of showers and recreation." (Dkt. No. 1 at 6.) Plaintiff also claims that Defendants subjected him to inhumane conditions while at Great Meadow by forcing him to use facility toilets and showers "not designed to accommodate prisoners with . . . disabling conditions." (Dkt. No. 1 at 6.) Plaintiff alleges that the design of the toilet stalls at Great Meadow, and the close proximity of the sink to the toilet, prevented him from sitting up straight when on the toilet and caused him to experience "extreme pain and discomfort" as a result of having to bend forward while sitting. *Id.*

Concerning the showers, Plaintiff claims that the inadequate railings, the lack of a bench or seat, and the size of the stall made it impossible for him to shower with crutches during his incarceration at Great Meadow. (Dkt. No. 1 at 6.) As a result, Plaintiff alleges that the only way he was able to shower while at Great Meadow was to prop himself against the shower wall for

support.  *Id.*  Showering in this way created a substantial health hazard, according to Plaintiff, because it required him to expose portions of his body to the "soap scum of infectious germs" on the shower walls.  *Id.* Although Plaintiff states in his complaint that he has "experienced an infection of a serious degree from such in the past within a DOCS [sic] facility," he does not allege any injury resulting from having to lean against the shower walls while at Great Meadow.  (Dkt. No. 1 ar 6-7 ¶ 16.)

In addition to depriving him of accessible showers, Plaintiff alleges that Defendants have deprived him of recreation in violation of the Eighth Amendment by requiring him to walk an "extreme distance" and navigate an "excessive amount of stair steps" to reach the facility's recreation yard.  (Dkt. No. 1 at 6.)  Due to his knee condition and use of assistive devices to walk, as well as his asthma related breathing difficulties, Plaintiff states that these factors make it painful and difficult for him to travel to and from the recreation yard and functionally deprived him of recreation during his incarceration at Great Meadow.  *Id*.

To establish a violation of the Eighth Amendment based on conditions of confinement, a prisoner must establish : (1) a sufficiently serious deprivation; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). To satisfy the first element, the alleged deprivation must be so "'objectively, sufficiently serious' [it resulted in the inmate being]…denied 'the minimal civilized measure of life's necessities.'" *Gaston*, 249 F.3d at164 (quoting *Farmer*, 511 U.S. at 834). "This objective component . . . is also context specific, turning upon 'contemporary standards of decency.'" *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citations omitted).  To establish a sufficiently culpable state of mind in a conditions of confinement claim, a plaintiff must demonstrate that the prison official in question knew of the

substantial risk of serious harm the inmate faced because of the conditions in question and that the official nevertheless disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 838-42.

Here, as discussed above, Plaintiff has not raised a triable issue that Dr. Karandy's refusal to transfer him to a more accessible DOCCS facility deprived him of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Regarding the bathroom facilities, Plaintiff's claim that he was deprived the use of accessible showers and toilets while at Great Meadow is facially insufficient because Plaintiff does not even claim to have been denied access to bathroom facilities. Rather, Plaintiff claims that the discomfort he was forced to endure as a result of leaning against the shower walls and having to sit forward while on the toilet constituted inhumane conditions of confinement under the Eighth Amendment. These alleged discomforts do not rise to the level of an Eighth Amendment violation. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 301 (S.D.N.Y. 2009) (noting that prison administration's failure to provide non-slip mats in showers to prevent inmates from falling on slippery floors does not rise to the level of an Eighth Amendment violation) (citations omitted).

Likewise, with respect to his alleged deprivation of outdoor recreation, Plaintiff alleges only that the distance makes it difficult and uncomfortable for him to reach the recreation yard, but fails to demonstrate how that difficulty rises to the level of a true deprivation sufficient to violate the Eighth Amendment. *O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH), 2012 WL 987726, at *14, 2012 U.S. Dist. LEXIS 39232, at *39-40 (N.D.N.Y. Feb. 28, 2012) (finding plaintiff's claim that he was forced to avoid the prison recreation yard because defendants encouraged other inmates to

pour cold water on him did not rise to the level of an Eighth Amendment violation).  Therefore, Plaintiff's Eighth Amendment conditions of confinement claims should be dismissed.

      3.     <u>42 U.S.C. § 1983 Claim Against Dr. Karandy: Fourteenth Amendment Claim</u>

In addition to his Eighth Amendment claims against Dr. Karandy, Plaintiff also appears to assert a violation of due process as guaranteed by the Fourteenth Amendment.  Specifically, Plaintiff claims that the "Department of Correctional Services committed an independent due process violation by failing to follow its own regulations regarding the care and oversight of [the] physical and mental health" of inmates in its custody.  (Dkt. No. 1 at 3.)  To prevail on a procedural due process claim, "a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).  Concerning the specific due process rights of inmates, the Second Circuit has held that a prisoner has a liberty interest in the essential nature of his confinement, and that this interest must be safeguarded with appropriate procedures.  *Bailey v. Pataki*, 708 F.3d 391, 400 (2d Cir. 2013).  However, the Supreme Court has held that such liberty interests protected by the Fourteenth Amendment "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, dismissal of Plaintiff's due process claim against Dr. Karandy is warranted for two reasons: (1) Plaintiff's alleged right to be granted a "medical transfer" to a different DOCCS facility does not constitute a protected liberty interest for purposes of the Fourteenth Amendment; and (2) Plaintiff fails to allege facts sufficient to demonstrate that he was denied the desired transfer without due process.  Concerning the first deficit, Plaintiff bases his due process claim on Dr.

Karandy's recommendation, and DOCCS's ultimate denial, of his request for medical transfer to another, more accessible facility.  (Dkt. No. 1 at 3.)  Plaintiff asserts that this failure to transfer amounted to a failure to safeguard inmate health and safety.  (Dkt. No. 1 at 3.)  In support of his position that transfer to a different facility constitutes a liberty interest protected by the Fourteenth Amendment, Plaintiff cites New York Corrections Law § 70 which, according to Plaintiff, "directs Department of Corrections officials to maintain and operate correctional facilities with due regard . . . to the health and safety of every person in the custody of the department."  (Dkt. No. 1 at 3 ¶ 7.)

Contrary to Plaintiff's assertions, Corrections Law § 70 does not create a protected interest for purposes of his due process claims.  In *Cofone v. Manson*, 594 F.2d 934 (2d Cir. 1979), the Second Circuit explained that "[a]lthough a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirement. *Id.* at 938. Moreover, the Second Circuit has held that absent a specific protected interest, a prisoner has no right to housing in a particular facility and no right to process regarding a transfer to another facility.  *McMahon v. Fischer*, No. 10-1678-pr, 2011 WL 5529858, at *2, 2011 U.S. App. LEXIS 22946, at *5 (2d Cir. 2011) (citing *Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir.1988)).

Regarding the second component of his due process claim, apart from bald assertions that his due process rights were violated by Defendants in denying his transfer request, Plaintiff fails to identify any specific flaws in DOCCS' procedure for reviewing reasonable accommodation

requests submitted by inmates.[6]  Plaintiff also fails to include any allegations sufficient to demonstrate that Dr. Karandy deviated from this procedure in such a way as to deprive Plaintiff of due process.

Plaintiff fails to allege facts showing either that he protected liberty interest in the "medical transfer" he requested or that he was deprived of due process by Dr. Karandy or any other DOCCS official in reviewing his request. As such, Plaintiff's Fourteenth Amendment due process claim should be dismissed.

### C.      State Law Claim: Fraud

Plaintiff claims that he is entitled to damages against Dr. Karandy for fraud based on his contention that Dr. Karandy "intentionally conceal [sic] and suppressed my actual and factual medical and impairment condition" from DOCCS administration.  (Dkt. No.1 at 9-10 ¶ 26.) Specifically, Plaintiff cites New York Penal Law 175.35, the state criminal law statute prohibiting the offering of a false instrument for filing.  (Dkt. No. 1 at 10 ¶ 27.)  As the criminal statute cited by Plaintiff does not create a civil right of action, I construe Plaintiff's allegations as seeking recovery for common law fraud under New York state law.

To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.  *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted).  To establish fraudulent

---

[6]      For DOCCS procedure for reviewing reasonable accommodation requests, see Directive 2614. (Dkt. No. 27-4 at 14-16).

concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information. *Id.* (*citing Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 152 (2d Cir.1993); *Gurnee v. Hasbrouck,* 267 N.Y. 57 (1935)). Under New York law, each element of a fraud claim must be shown by clear and convincing evidence. *Id.*

Plaintiff has failed to allege facts sufficient to establish that Dr. Karandy made a materially false representation regarding Plaintiff's condition to the DOCCS administration (or anyone else) or that he intended to defraud Plaintiff. The evidence indicates that Dr. Karandy in fact agreed with Plaintiff's previous doctors and with Plaintiff himself that he suffered from "arthritis and degeneration in right and left knees." (Dkt. No. 27-4 at 2.) The conduct upon which Plaintiff apparently intends to rely as the basis for his fraud claim is Dr. Karandy's recommendation that Plaintiff remain at Great Meadow in lieu of the transfer desire by Plaintiff. (Dkt. No. 1 at 10-11 ¶ 28.) Without more, the fact that Plaintiff disagrees with Dr. Karandy's recommendation cannot serve as the basis for Plaintiff's claim of fraud. Plaintiff's state law fraud claim should therefore be dismissed.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 27) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Cole v. Goord*, No. 05 Civ. 2902 (GEL), 2009 WL 2601369, 2009 U.S. Dist. LEXIS 75580 (S.D.N.Y. Aug. 25, 2009); *Hilton v. Wright*, ___ F. Supp. 2d ___, No. 9:05-CV-1038, 2013 U.S. Dist. LEXIS 55047, at *58; 2013 WL 873826, at *19 (N.D.N.Y. Mar. 11, 2013); *McMahon v. Fischer*, No. 10-1678-pr, 2011 WL 5529858, 2011 U.S. App. LEXIS 22946 (2d Cir. 2011); *O'Diah v. Fischer*, No. 08-CV-941

(TJM/DRH), 2012 WL 987726, 2012 U.S. Dist. LEXIS 39232 (N.D.N.Y. Feb. 28, 2012); and

*Pacheco v. Zurlo*, No. 9:09-CV-1330 (TJM/ATB), 2011 WL 1103102, 2011 U.S. Dist. LEXIS 29668 (N.D.N.Y. Feb. 8, 2011).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  July 31, 2013
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge